UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CATHY DUGAS                                    CIVIL ACTION

VERSUS                                         NO. 11-135

ST. CHARLES COMMUNITY                          MAGISTRATE JUDGE
HEALTH CENTER, INC.                            JOSEPH C. WILKINSON, JR.


## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter was referred to a United States Magistrate Judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c), upon the written consent of all parties. Record Doc. No. 14. Plaintiff, Cathy Dugas, filed this action against her former employer, Access Health Louisiana, formerly known as St. Charles Community Health Center, Inc. ("Access Health"), alleging that defendant had retaliated against her for having previously filed a discrimination charge against defendant under Title VII with the Equal Employment Opportunity Commission ("EEOC"). Dugas seeks monetary compensation. A trial was conducted before the court without a jury on November 17, 2011.

Having considered the evidence at trial, the record, the testimony of the witnesses, the arguments and written submissions of the parties and the applicable law, the court makes the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a).

# FINDINGS OF FACT

1.      Dugas applied for employment with Access Health on February 26, 2009. She was hired and began work as an administrative assistant at defendant's community health center on February 27, 2009. Defendant's Exhibit 4. Her immediate supervisor was Mary Martinez, the operations manager. Dugas and Martinez both worked under the overall supervision of James Comeaux, the chief operating officer at the facility.

2.      Upon being hired, Dugas signed an employee Code of Conduct and a confidentiality agreement, which required that patient information and personnel matters must be kept confidential and that violation of the Code of Conduct could lead to disciplinary action. Defendant's Exhibit 3.

3.      A job applicant named Goldie Collins took a tuberculosis test as a standard part of the application and hiring process for every employee whom defendant hired. On or about July 7, 2009, Dugas, acting outside of the framework of her job responsibilities as an administrative assistant and in violation of defendant's policies concerning the confidentiality of personnel matters, erroneously insinuated to Collins that Collins had tested positively for tuberculosis, causing Collins to become understandably upset. Martinez rightfully reprimanded Dugas for this improper job performance. Defendant's Exhibits 5, 10 at ¶ F.

4.     On or about September 12, 2009, Dugas signed the name "K. DeRoche" in cursive handwriting in the "administered by" signature block on a flu vaccination form maintained at the health center.  Defendant's Exhibit 23.  Dugas's action in this regard was improper in two respects.  First, the manner in which plaintiff signed the form, in script rather than printing it, gave rise to the appearance that she may have forged the name of the person who actually administered the immunization.  Second, the name signed by Dugas in the "administered by" signature block was <u>not</u> the name of the person who had actually administered the flu shot.  The effect was that defendant's medical record, which is subject to federal regulation, was incorrect and misleading.  For this improper job performance, Dugas rightfully received a written reprimand on September 21, 2009 and was suspended from work by Comeaux for one day, with a corresponding loss of eight (8) hours of pay.  Defendant's Exhibits 13, 23.

5.     On September 22, 2009, plaintiff wrote to Access Health's Chief Executive Officer, Mark Keiser, complaining that (1) written reprimands regarding her job performance were unwarranted, (2) Comeaux had been unprofessional, rude, condescending and verbally abusive to her, (3) Martinez had borrowed $2,600 from her and had threatened plaintiff's job if she requested repayment, (4) Martinez had been unsupportive and "has chosen to throw me under the bridge to protect her[self]," Defendant's Exhibit 8 at unnumbered second page (previously filed in the record as

Record Doc. No. 1-1 at p. 43), and (5) plaintiff's work environment was intolerable and had caused her to have heart attack-like symptoms, prompting her doctor to order her to leave work. Plaintiff's Exhibit 15; Defendant's Exhibit 8 (previously filed in the record as Record Doc. No. 1-1 at p. 44).

6. On October 15, 2009, plaintiff filed a discrimination complaint with the EEOC, alleging that she had been discriminated against based on her race. The charge alleged that Martinez had borrowed money from Dugas and that: "It wasn't long after I told her I couldn't help her anymore she began to treat me badly most days." Defendant's Exhibit 10, ¶ D. Dugas, a Caucasian, alleged that Martinez, who is Hispanic, discriminated against plaintiff and in favor of Hispanic co-workers because of plaintiff's race. Id. ¶ F.

7. On a date that is uncertain on this record but after July 7, 2009, Defendant's Exhibit 5, and before December 18, 2009, Defendant's Exhibit 12, Dugas was moved from an office behind the receptionist's area, which she had shared with another employee, to a different, single-occupant office. Defendant's Exhibits 5, 6, 7. The health center had limited private office space. While the new office into which Dugas was moved was small, it had previously been used by others, including a dietician and a Registered Nurse, Peggy Barrios. Nurse Barrios credibly and convincingly testified at

trial that the office was suitable for her work as a nurse and that she did not feel punished, discriminated against or isolated in any way by her assignment to that office.

8.     On January 18, 2010, plaintiff resolved her October 15, 2009 EEOC race discrimination charge against defendant.  As part of the resolution, Access Health expunged the September 21, 2009 written warning from plaintiff's file, added back to her gross pay $159.75 that had been docked for her one-day suspension, and promised to develop a revised job description for her.  Defendant's Exhibits 13, 14.  As a result, Dugas formally withdrew her discrimination charge.  Defendant's Exhibit 15.

9.     On February 18, 2010, defendant finalized a written job description for plaintiff's position, now called operations assistant.  Danielle Netherland, defendant's Human Resources Advisor at the time (who testified by deposition, Record Doc. No. 50), met with Dugas, Martinez and Comeaux to review plaintiff's current duties and defendant's needs and expectations from her.  Netherland concluded that Dugas's job duties had changed over time, including the transfer of some of her duties to various departmental supervisors, but her job description had not been updated to reflect the changes.  The new job description clarified plaintiff's duties and resulted in the reclassification of her position from an exempt salaried employee to a nonexempt hourly employee.  Defendant's Exhibit 16.

10.    On April 11, 2010, defendant corrected an administrative error in the calculation of Dugas's rate of pay, which had been erroneously increased from $17.74 per hour to $25.96 per hour when her job classification was changed from exempt to nonexempt, effective February 28, 2010.  On April 30, 2010, defendant sent a letter to the Social Security Administration with attachments explaining the payroll error. Defendant's Exhibits 16, 20, 21.  This adjustment was merely an administrative correction and was not retaliatory.

11.    Plaintiff's last day at work as an employee of defendant was April 19, 2010, when she began a Family Medical Leave Act ("FMLA") leave based on injuries she had allegedly suffered when she fell in the parking lot at work and on the advice of her doctors.  Plaintiff's Exhibit 7 (records of Drs. Christopher Richards and C.K. Billings).

12.    On April 30, 2010, Dugas filed a new charge with the EEOC, claiming that defendant had retaliated against her for the October 15, 2009 filing of her race discrimination charge No. 461-2010.00111.  Specifically, the new charge, upon which the instant case is based, alleged "retaliation" that constituted "continuing action" from February 18, 2010 through April 30, 2010.  The charge stated:  "Since February 2, 2010, I have been demoted to an Administrative Assistant position and [Access Health] has altered the job description, and taken away my former duties.  I have also been denied a promotion to the Operations Manager position, for which I applied, was qualified for

the position, was not chosen, and a less qualified person was selected.  I also have been isolated, by being place[d] on [sic] an office where I do not have any contact with anybody unless they are coming to see me."  Defendant's Exhibit 22.

13.     On June 8, 2010, through her attorney, Dugas filed two disputed claims for worker's compensation benefits:  one alleging that she "felt a snap in her back" when she picked up a heavy box on December 3, 2009; and the second alleging that, on March 11, 2010, she stepped either on a rock or in a hole in defendant's parking lot at her work site, lost her balance and fell, injuring her left knee and shoulder.  Defendant's Exhibit 30.

14.     Plaintiff's FMLA leave expired on July 25, 2010.  When she requested additional leave time, Access Health wrote to Dugas on August 9, 2010, informing her that it could not hold her position open past August 18, 2010 because her available FMLA leave had expired and defendant's operational needs required that the position be filled.  Defendant advised Dugas that her employment would be terminated if she did not return to work on August 19, 2010.  Defendant's Exhibit 25.

15.     On August 20, 2010, Access Health notified Dugas by letter that her position could no longer be held open because the health center needed to fill the position, and that her employment was terminated effective August 19, 2010. Defendant's Exhibit 26.

16.     On December 1, 2010, the EEOC provided Dugas with a Notice of Right to Sue, stating that it was doing so because more than 180 days had passed since the charge was filed and that the EEOC was terminating its processing of the charge. Record Doc. No. 1-1, at p. 5.

17.     With the exception of Mary Martinez, the witnesses presented by plaintiff in her case-in-chief, specifically her former co-workers, Linda Brien, Erica Bordelon, Michelle Comboy, Nina Breaux and Peggy Barrios, were entirely credible. Their demeanor on the stand and their manner of testifying were straightforward, professional and personally courteous–even friendly–toward plaintiff. The content of their testimony was sensible and fully responsive. However, the substance of their credible testimony did not support any of the legally required essential elements of plaintiff's Title VII claims.

18.     I do not credit the testimony of Mary Martinez. Her on-the-job conduct, especially her extraction of $2,600 in borrowed money from plaintiff, who was Martinez's subordinate employee, and her subsequent failure to repay the money promptly was irresponsible at the least and reprehensible at the most. Based upon Martinez's bearing and demeanor at trial and the nature of the money-borrowing circumstances between Martinez and Dugas, I find that Martinez was capable of acting in a hostile, unprofessional and rude manner toward Dugas. However, her unacceptable

conduct toward plaintiff in connection with the borrowed money bears little relevance to plaintiff's Title VII retaliation claims. I specifically find that any hostile or otherwise abusive conduct directed at plaintiff by Martinez was motivated entirely by the circumstances of their strained lender-borrower relationship, rather than by any discriminatory ethnic bias or retaliation for protected Title VII activity.

19.     I do not find that plaintiff was entirely lacking in credibility. Her testimony concerning her own feelings, including mental anguish, anxiety and physical pain, was sincere. She candidly admitted some of her own job performance errors that gave rise to the minor disciplinary actions she received. However, her testimony and version of key events with direct impact on her retaliation claims cannot be credited. Obviously, a person who has multiple life stressors, including but not limited to a fall with injuries, back pain, caring for an aging mother, a longstanding history of bipolar disorder and the other personal problems that Dugas described, has mental anguish and anxiety. However, it is more probable than not that the legal cause of plaintiff's injuries is <u>not</u> any allegedly retaliatory conduct by defendant of the type prohibited by Title VII. Thus, no causal link exists between the protected activity and the adverse actions of which Dugas complains in this action.

20.     As to events that might constitute "protected activity" for which Title VII prohibits retaliation, Dugas testified that she complained to the EEOC on <u>three</u> (3)

separate occasions, first on June 7, 2009, then twice more on October 15, 2009 and April 10, 2010, in addition to her September 22, 2009 letter to defendant's CEO Keiser. I find that plaintiff's testimony that she first complained to the EEOC on June 7, 2009 is <u>not</u> credible for the following reasons. Her testimony on this point was vague, uncertain and unreliable. Her demeanor and manner of testifying about it was forced, defensive and unclear. Significantly, her testimony was wholly <u>un</u>corroborated by any testimony of her witnesses or any documentary evidence. It is simply not believable that the EEOC would fail to document a charge of discrimination. It is undisputed that defendant did not receive notice from the EEOC or Dugas herself of any June 7, 2009 discrimination complaint.

21. Thus, I find that Dugas first complained to defendant's upper management about the conduct of her supervisors Martinez and Comeaux on September 22, 2009 and that her first complaint to the EEOC occurred on October 15, 2009. These two complaints were protected activity under Title VII.

22. As to the conduct constituting retaliatory acts, Dugas characterized defendant's retaliatory conduct in five (5) separate categories: (1) the reprimand she received on or about July 7, 2009 in connection with the Goldie Collins tuberculosis test; (2) allegedly hostile and abusive oral reprimands by Comeaux and the written reprimand she received on September 21, 2009, all related to her improper signing of another

employee's name on an immunization administration form on September 12, 2009; (3) her move to a smaller office on an unknown date between July 7 and December 30, 2009; (4) defendant's failure to promote her to operations manager after the position became available on December 11, 2009, Defendant's Exhibit 11; and (5) hostile and abusive language and conduct directed toward her by Comeaux, Netherland and Martinez. Plaintiff's October 15, 2009 EEOC charge also alleged retaliation in the form of reduction of her duties, an altered job description and demotion to the position of administrative assistant.

23.     All of the conduct about which Dugas complains that occurred <u>before</u> September 22, 2009 could <u>not</u> constitute retaliatory action, as a matter of fact or law, because she made <u>no</u> complaint and took <u>no</u> other action before that date that could conceivably be characterized as "protected activity" under Title VII. Thus, defendant's reprimand of Dugas for the Goldie Collins incident on July 7, 2009 and the oral and written reprimands she received between September 12 and September 21, 2009 regarding the flu shot incident could not have been retaliatory. Similarly, her move to a smaller office could not have been retaliatory if it occurred before September 22, 2009.

24.     As to incidents that occurred after September 22, 2009, none were materially adverse to plaintiff, as defined by the United States Supreme Court in <u>Burlington N. & Santa Fe Ry. v. White</u>, 548 U.S. 53, 58 (2006), and its progeny.

25.     All of the job performance reprimands that she received were warranted. Neither Comeaux, Netherland nor Keiser were unprofessional or abusive to Dugas in any way. Except for the money-borrowing circumstance involving Mary Martinez, plaintiff's work environment was tolerable to a reasonable person.

26.     Access Health did nothing to Dugas in retaliation for her protected action of filing a charge with the EEOC on October 15, 2009 or her letter to Keiser on September 22, 2009. She was never demoted. She was hired as an administrative assistant in operations, and her revised job description on February 18, 2010 was for an operations assistant in the administration department. Plaintiff's testimony that she was hired as an operations assistant <u>manager</u> was not credible and was not corroborated by any other testimony or documentary evidence. Her pay was never reduced, except to correct a clerical error that had mistakenly increased her pay rate, which was in no way retaliatory.

27.     Plaintiff's working conditions were never modified in any significantly adverse way. During the course of her employment, some of her job duties were transferred to others, but there is no evidence that this either affected her adversely or was done in retaliation for her complaints of discrimination. Her job description was revised in February 2010 to reflect the duties that Dugas actually performed and to alleviate any lack of clarity about her duties and defendant's expectations of her,

following Netherland's investigation and conclusion that the lack of an accurate job description had contributed to some of plaintiff's work place errors. No reasonable employee would consider this to be materially adverse.

28. The smaller office to which she was moved was reasonably comfortable and tolerable and was not assigned to her for any retaliatory purpose whatsoever.

29. Dugas was not qualified for the promotion to Operations Manager that she sought in December 2009 because she did not possess either a bachelor's degree in business administration, health care administration or a related field, or six years of experience in health care. Defendant's Exhibit 11. Unlike Dugas, the applicant who was hired for the position possessed the requisite qualifications. This is a legitimate reason for hiring the other applicant and refusing to promote plaintiff. Therefore, defendant's failure to promote Dugas to this position was not retaliatory.

30. Dugas never returned to work for Access Health after her extended FMLA leave expired because her doctor advised her that she could not return to work. She never responded to defendant's August 9, 2010 letter advising her that, because of its business needs, defendant could not hold her position open after August 18, 2010. Access Health reasonably concluded that Dugas would not return to work. It was defendant's standard policy to terminate an employee who did not return to work at the end of an approved FMLA leave. Because defendant's legitimate reasons for plaintiff's

termination are not false, unworthy of belief or evidence of retaliatory intent, her termination was <u>not</u> causally linked to her earlier protected activity.

31. Neither Netherland nor Comeaux used language or engaged in other conduct that could be deemed so abusive or harassing that a reasonable employee would find it retaliatory or unbearable. There is nothing in Netherland's deposition testimony from which I might conclude that her conduct toward Dugas was hostile or abusive in any way. Comeaux's manner of testifying and his bearing on the witness stand convince me that, while he may have been curt, blunt and firm in his delivery of directions and/or criticism to Dugas regarding her job performance, he was <u>not</u> unreasonably rude, abusive or unprofessional in any way. The reprimands and the tone in which they were delivered were fully justified, given Dugas's performance errors. For example, the instruction that Dugas must make 2,500 copies of vaccination forms was fully justified by the business necessity that the health center expected to administer 2,500 flu shots. I find, based upon plaintiff's bearing, demeanor and manner of testifying, that she overreacted in an unreasonably sensitive manner to the appropriate conduct of her superiors on the job and that her description of this conduct as abusive or hostile is not credible.

## CONCLUSIONS OF LAW

1.      This is a claim pursuant to Title VII, specifically 42 U.S.C. § 2000e-3(a). Federal question jurisdiction exists under 28 U.S.C. § 1331.  Venue is proper in the Eastern District of Louisiana.

2.      "The scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.  The scope of the inquiry is not, however, limited to the exact charge brought to the EEOC.  EEOC charges are to be given a liberal construction, especially those authored by unlawyered complainants."  McDonald v. S. Diversified Indus., Inc., No. 1:02CV186-D-D, 2003 WL 22244321, at *3 (N.D. Miss. Aug. 5, 2003) (citing Thomas v. Tex. Dep't of Crim. Justice, 220 F.3d 389, 395 (5th Cir. 2000); Young v. City of Houston, 906 F.2d 177, 179 (5th Cir. 1990); Fellows v. Universal Restaurants, Inc., 701 F.2d 447, 451 (5th Cir. 1983)).

3.      In the instant case, plaintiff's April 30, 2010 EEOC charge was limited to a claim of "retaliation for filing a previous EEOC Charge (461-2010-00111)" on October 15, 2009.  Defendant's Exhibit 22.  Plaintiff withdrew that previous EEOC Charge (461-2010-00111) in writing on February 2, 2010, after the claims asserted in it were amicably resolved.  Defendant's Exhibit 15.  Consistent with her April 30, 2010 EEOC charge, plaintiff confirmed in her testimony at trial that her claim in this case is

limited to a claim that defendant retaliated against her for having asserted her Title VII rights.

4.     Title VII prohibits retaliation by an employer against an employee, as follows:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).  Thus, "Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee . . . because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'"  Burlington N., 548 U.S. at 58 (quoting 42 U.S.C. § 2000e-3(a)); accord McCoy v. City of Shreveport, 492 F.3d 551, 561 n.28 (5th Cir. 2007).

5.     Plaintiff has the initial burden of proving a prima facie case of retaliation by a preponderance of the evidence.  To establish a prima facie case, she "must show (1) that [s]he engaged in a protected activity; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse action."  Drake v. Nicholson, 324 F. App'x 328, 331 (5th Cir. 2009) (citing Holloway v. Dep't of Veterans Affairs, 309 F. App'x 816, 818 (5th Cir. 2009); LeMaire v. La. Dep't

of Transp. & Dev., 480 F.3d 383, 388 (5th Cir. 2007)); accord Roberts v. Unitrin

Specialty Lines Ins. Co., 405 F. App'x 874, 879 (5th Cir. 2010) (citing Stewart v. Miss.

Transp. Comm'n, 586 F.3d 321, 331 (5th Cir. 2009)).

6.      The purposes of Title VII's anti-retaliation provisions inform the

determination when and whether Dugas engaged in "protected activity" sufficient to

satisfy the first prong of a prima facie case of retaliation.

> The antidiscrimination provision seeks a workplace where individuals are
> not discriminated against because of their racial, ethnic, religious, or
> gender-based status.  The antiretaliation provision seeks to secure that
> primary objective by preventing an employer from interfering (through
> retaliation) with an employee's efforts to secure or advance enforcement of
> [Title VII's] basic guarantees.  The substantive provision seeks to prevent
> injury to individuals based on who they are, i.e., their status.   The
> antiretaliation provision seeks to prevent harm to individuals based on what
> they do, i.e., their conduct.
>       . . . . Hence, . . . the antiretaliation provision's primary purpose . . .
> [is] maintaining unfettered access to statutory remedial mechanisms.

Burlington N., 548 U.S. at 58 (quotation and citations omitted) (emphasis added).

7.      "The filing of an EEOC complaint is clearly a protected activity within the

meaning of the statute." Hockman v. Westward Commc'ns, LLC, 407 F.3d 317, 330 (5th

Cir. 2004) (citing Walker v. Thompson, 214 F.3d 615, 629 (5th Cir. 2000)).

8.      In addition, "[a]n employee's informal complaint to an employer may

constitute participation in a protected activity."  Williams v. Racetrac Petroleum, Inc.,

No. 09-141-SCR, 2010 WL 2035728, at *2 (M.D. La. May 20, 2010) (citing Burlington

N., 548 U.S. at 58); Cavazos v. Springer, No. B-06-058, 2008 WL 2967066, at *7 (S.D. Tex. Aug. 8, 2008)); accord Clark v. Chickasaw County, No. 1:09CV192-SA-JAD, 2010 WL 3724301, at *6-7 (N.D. Miss. Sept. 16, 2010); Huffman v. City of Conroe, No. H-07-1964, 2009 WL 361413, at *10 (S.D. Tex. Feb. 11, 2009) (citing Broderick v. Donaldson, 437 F.3d 1226, 1232 (D.C. Cir. 2006); Curay-Cramer v. Ursuline Academy of Wilmington, Del., Inc., 450 F.3d 130, 135 (3d Cir. 2006); Fierros v. Tex. Dep't of Health, 274 F.3d 187, 194 (5th Cir. 2001); Matima v. Celli, 228 F.3d 68, 78-79 (2d Cir. 2000)).

9.      Regarding the second prong of a prima facie case, the Supreme Court held in Burlington Northern that,

> to prove an adverse employment action, a plaintiff need not show the employer made an "ultimate employment decision"; instead "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination".  This decision abrogated our court's previous approach, which required showing an "ultimate employment decision", such as "hiring, granting leave, discharging, promoting, and compensating" to establish a prima facie retaliation claim.

Donaldson v. CDB Inc., 335 F. App'x 494, 506 (5th Cir. 2009) (quoting Burlington N., 548 U.S. at 68) (emphasis added by Fifth Circuit) (additional citations omitted).

10.      As to the nature of retaliatory conduct,

> [w]hile Burlington Northern, of course, established a less demanding standard for judging whether conduct is actionable as retaliation, the Court

noted: "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." Rather, prohibited employer actions are those "that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers."

Id. (quoting Burlington N., 548 U.S. at 68). "By focusing on the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position," the retaliation "standard will screen out trivial conduct while effectively capturing those acts that are likely to dissuade employees from complaining or assisting in complaints about discrimination." Burlington N., 548 U.S. at 69-70.

11.    As to causation, the third prong of plaintiff's prima facie case,

[t]he causal link required by the third prong of the prima facie case does not have to meet a "but for" standard. A plaintiff does not have to prove that his protected activity was the sole factor motivating the employer's challenged actions in order to establish the causal link element of a prima facie case . . . . [A] plaintiff may also satisfy the burden of proving retaliation by demonstrating that unlawful retaliation was a motivating factor in the employer's adverse employment decision.

Williams, 2010 WL 2035728, at *2-3 (citing Smith v. Xerox Corp., 602 F.3d 320 (5th Cir. 2010)) (emphasis added).

12.    The required causal link between the protected activity and the adverse action cannot be established if the protected activity occurred after the adverse employment action at issue. By its very nature, retaliation may occur only if the alleged perpetrator of the retaliation knows of some prior protected conduct that prompts the

retaliation.  Thus, actionable retaliation under Title VII occurs only when defendant knew

of some "protected activity" in which plaintiff engaged <u>before</u> the allegedly retaliatory

conduct occurred.  <u>See</u> <u>Davis v. Dallas Indep. Sch. Dist.</u>, No. 11-10090, 2011 WL

5299663, at *7 (5th Cir. Nov. 4, 2011) ("Because the protected activity occurred <u>after</u> the

adverse employment action at issue, [plaintiff] cannot demonstrate causation.")

(emphasis added); <u>Cartagena v. Aegis Mortg. Co.</u>, 275 F.3d 46, 2001 WL 1268730, at *9

(5th Cir. 2001) (causation cannot be established when defendant did not know about

plaintiff's protected activity before the allegedly retaliatory conduct); <u>Watts v. Kroger</u>

<u>Co.</u>, 170 F.3d 505, 512 (5th Cir. 1999) (defendant could not have retaliated against

plaintiff "because it did not know she had engaged in protected activity").

13.     If plaintiff makes a prima facie showing of retaliation,

> the burden then shifts to the employer to articulate a legitimate, . . .
> nonretaliatory reason for its employment action.  The employer's burden
> is only one of production, not persuasion, and involves no credibility
> assessment.  If the employer meets its burden of production, the plaintiff
> then bears the ultimate burden of proving that the employer's proffered
> reason is not true but instead is a pretext for the real . . . retaliatory purpose.
> To carry this burden, the plaintiff must rebut each . . . nonretaliatory reason
> articulated by the employer.

<u>McCoy</u>, 492 F.3d at 557 (citations omitted).

14.     As to the first prong of her prima facie case, Dugas testified that she made

<u>three</u> complaints to the EEOC that constitute activity protected by Title VII.  However,

as discussed above, she did <u>not</u> make any EEOC charge in June 2009.  Her first EEOC

charge, the one on which her retaliation claim in this case is based, was filed on October 15, 2009. In that charge, she complained that defendant had altered her job description, taken away some of her former duties, denied her a promotion to operations manager and isolated her by changing her office location. In addition, although Dugas testified that she does not complain that defendant retaliated against her because of her letter to defendant's CEO, Mark Keiser, on September 22, 2009, this letter constitutes protected activity. These two instances of protected activity establish the first prong of her prima facie case, but also establish that no retaliatory acts could have occurred before the first protected activity on September 22, 2009.

15. Dugas has failed to establish two of the three required elements of her prima facie case. As to the second prong, none of the conduct of which Dugas complains during the relevant time period _after_ September 22, 2009 constitutes a materially adverse employment action, except her contention that defendant did not promote her to a job for which she was allegedly qualified and possibly Martinez's hostile and abusive conduct. (The court will assume without deciding that these two actions could conceivably satisfy the second prong of a prima facie case.) Regarding the other actions about which she complains, Dugas failed to prove that any language or conduct by Comeaux or Netherland was hostile or abusive. The transfer of some of her job duties to others, the revision of her job description to reflect her duties accurately, her relocation to a different

but adequate work space, and oral criticism that resulted in no demotion or loss of pay were not adverse employment actions. <u>Roberts</u>, 405 F. App'x at 879; <u>Magiera v. City of Dallas</u>, 389 F. App'x 433, 437 (5th Cir. 2010); <u>Stewart</u>, 586 F.3d at 332 (citing <u>Burlington N.</u>, 548 U.S. at 69, 71); <u>King v. Louisiana</u>, 294 F. App'x 77, 85 (5th Cir. 2008); <u>DeHart v. Baker Hughes Oilfield Operations, Inc.</u>, 214 F. App'x 437, 443 (5th Cir. 2007); <u>Peace v. Harvey</u>, 207 F. App'x 366, 368-69 (5th Cir. 2006). "These actions would not dissuade a reasonable employee from making a charge of discrimination." <u>Stewart</u>, 586 F.3d at 332. Indeed, they did not dissuade Dugas herself from filing a charge of retaliation on April 30, 2010.

16.　　As to all allegedly retaliatory conduct during the relevant time period, including Martinez's allegedly hostile and abusive conduct and Access Health's failure to promote plaintiff to operations manager, Dugas also failed to carry her burden to prove the causal link necessary to establish the third prong of her prima facie case. She provided only speculation and conclusory allegations, but no credible evidence, that the transfer of some of her job duties to others, the revision of her job description, her relocation to a different office and oral criticisms by any supervisor were causally linked to her prior complaints of discrimination. As discussed above, Martinez's hostile conduct was causally related to her debtor relationship to Dugas, <u>not</u> to any of Dugas's activity that was protected by Title VII. There is no credible evidence that Martinez

knew about either plaintiff's September 22, 2009 letter to Keiser or plaintiff's filing of the October 15, 2009 EEOC complaint. Keiser himself testified that he did not receive plaintiff's letter in September 2009 and did not see it until much later, after plaintiff started the litigation process. Even assuming that Martinez knew about either the letter to Keiser or plaintiff's formal discrimination complaint, there is no credible evidence that retaliation for plaintiff's protected Title VII activity was a motivating factor for Martinez's actions. It is more probable than not that Martinez was hostile because she owed Dugas a large sum of money that she was avoiding paying back. Plaintiff's subjective, self-serving testimony that Martinez retaliated against her because of plaintiff's protected activity is not credible and is uncorroborated by any other credible evidence. It is well established that a witness's trial testimony of a mere subjective belief that retaliation occurred, unsupported by any specific factual evidence, cannot serve as the basis for judicial relief. Chaney v. New Orleans Pub. Facility Mgmt., 179 F.3d 164, 168 (5th Cir. 1999) (citing Elliott v. Group Med. & Surg. Serv., 714 F.2d 556, 564 (5th Cir. 1983)); Travis v. Bd. of Regents, 122 F.3d 259, 265 (5th Cir. 1997) (citing Armendariz v. Pinkerton Tobacco Co., 58 F.3d 144, 153 (5th Cir. 1995)); Grizzle v. Travelers Health Network, Inc., 14 F.3d 261, 268 (5th Cir. 1994) (citing Little v. Republic Ref. Co., 924 F.2d 93, 96 (5th Cir. 1991); Elliott, 714 F.2d at 564). Dugas has not established the third prong of her prima facie case regarding any actions, including

Martinez's conduct, that Access Health took regarding plaintiff's job as an administrative assistant.

17. As to defendant's failure to promote Dugas to operations manager when the job was posted in December 2009, Dugas was not qualified for the promotion, while the applicant who was hired possessed the requisite qualifications, which were superior to plaintiff's qualifications. Plaintiff has failed to establish that retaliation was a motivating factor in Access Health's decision not to promote her.

18. Dugas also failed to prove any causal link between her protected activity and the termination of her employment. Access Health terminated her employment on August 19, 2010, eleven months after her September 22, 2009 letter to Keiser and ten months after her October 15, 2009 EEOC charge. As a matter of law and fact, "[t]he several-month spans between the alleged protected activities and her termination negate any argument that a causal connection existed between the activities and the termination." Roberts, 405 F. App'x at 880 (citing Washburn v. Harvey, 504 F.3d 505, 511 (5th Cir. 2007)); accord DeHart, 214 F. App'x at 443 (citing Bell v. Bank of Am., 171 F. App'x 442, 444 (5th Cir. 2006); Myers v. Crestone Int'l, LLC, 121 F. App'x 25, 28 (5th Cir. 2005); Harvey v. Stringer, 113 F. App'x 629, 631 (5th Cir. 2004); Raggs v. Miss. Power & Light Co., 278 F.3d 463, 471-72 (5th Cir. 2002)). Therefore, Dugas has

not met her burden to establish the second and third prongs of her prima facie case of retaliation.

19.     Even if Dugas could establish a prima facie case of retaliation, which she has failed to do, she bears the ultimate burden under the burden-shifting framework to demonstrate that defendant's reasons are "either 1) false, or 2) that [defendant] was motivated by retaliation in addition to" its legitimate reasons. Bell, 171 F. App'x at 444-45.  Plaintiff has failed to carry her burden of showing that Access Health's stated reasons for its employment decisions were "false, unworthy of credence, or otherwise unpersuasive." Roberts, 405 F. App'x at 879-80 (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000)); accord Cervantez v. KMGP Servs. Co., 349 F. App'x 4, 10 (5th Cir. 2009) (citing Keelan v. Majesco Software, Inc., 407 F.3d 332, 345 (5th Cir. 2005)).  Dugas has failed to offer credible evidence sufficient to establish the falsity or incredible nature of defendant's legitimate, nonretaliatory reasons for changing her job duties and job description, moving her office, criticizing her poor job performance when warranted, failing to promote her and terminating her employment when she failed to return to work after her extended FMLA leave had lapsed.

20.     Dugas was not qualified for the job of operations manager, while the applicant who was hired had the requisite credentials for the position.  This was a legitimate, nonretaliatory reason for Access Health not to promote Dugas.  "Selection of

a more qualified applicant is a legitimate and nondiscriminatory reason for preferring one candidate over another." <u>Sabzevari v. Reliable Life Ins. Co.</u>, 264 F. App'x 392, 395 (5th Cir. 2008) (citing <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 251-53 (1981)). "In fact, basing a promotion decision on an assessment of qualifications will almost always qualify as a legitimate, nondiscriminatory reason." <u>Scales v. Slater</u>, 181 F.3d 703, 712 (5th Cir. 1999).

21.     In addition, plaintiff's failure to return to work after the expiration of her FMLA leave time, coupled with defendant's business need to fill the position after Dugas had been absent for four months and its standard policy to terminate an employee who failed to return to work at the end of an approved FMLA leave, constituted legitimate, nonretaliatory reasons for Access Health to terminate her employment. <u>See</u> <u>Roberts</u>, 405 F. App'x at 879-80 (citing <u>Reeves</u>, 530 U.S. at 147) (affirming judgment for employer when employee failed to return to work from a six-month disability leave after being notified that she must return when her leave expired or face termination, she admitted that she was medically unable to work and she "set forth no evidence that [defendant's] reason for her termination was false, unworthy of credence, or otherwise unpersuasive.").

22.     It is well established that "anti-discrimination laws are not vehicles for judicial second-guessing of business decisions." <u>Mato v. Baldauf</u>, 267 F.3d 444, 452 (5th Cir. 2001) (quoting <u>Deines v. Tex. Dep't of Protective & Regulatory Servs.</u>, 164

F.3d 277, 281 (5th Cir. 1999)); accord Jackson v. Watkins, 619 F.3d 463, 468 n.5 (5th

Cir. 2010). "'Whether an employer's decision was the correct one, or the fair one, or the

best one is not a question within the [factfinder's] province to decide. The single issue

for the trier of fact is whether the employer's [action] was motivated by'" retaliation.

Bell, 171 F. App'x at 445 (quoting Deines, 164 F.3d at 278). It is immaterial whether

defendant's decisions to change plaintiff's job duties and office, hire another applicant

for operations manager and terminate plaintiff's employment may have been based on

incorrect facts, so long as its decisions were not motivated by retaliatory animus. Scales,

181 F.3d at 711. "Even if evidence suggests that a decision was wrong, [the court] will

not substitute [its] judgment . . . for the employer's business judgment." Scott v. Univ.

of Miss., 148 F.3d 493, 509-10 (5th Cir. 1998), abrogated on other grounds by Kimel v.

Fla. Bd. of Regents, 528 U.S. 62, 72 (2000) (citation omitted).

23.     Access Health objected to the admissibility of Dugas's medical records,

Plaintiff's Exhibit 7. I find that the records submitted by plaintiff as Exhibit 7 in globo

are the records of her treating physicians, not of experts "retained or specially employed"

by her "to provide expert testimony in the case." Fed. R. Civ. P. 26(a)(2)(B). The

Advisory Committee Notes accompanying the 1993 Amendments to the Federal Rules

of Civil Procedure explain that the requirement of a written report in Rule 26(a)(2)(B)

"applies only to those experts who are retained or specially employed to provide such

testimony in the case . . . .  A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report." <u>Hamburger v. State Farm Mut. Auto. Ins. Co.</u>, 361 F.3d 875, 882 (5th Cir. 2004) (quotation omitted); <u>accord Stepter v. Verele</u>, No. 10-1799, 2011 WL 2473949, at *2 (E.D. La. June 22, 2011); <u>Beechgrove Redevelopment, L.L.C. v. Carter & Sons Plumbing, Heating & Air-Conditioning, Inc.</u>, No. 07-8446, 2009 WL 981724, at *4 (E.D. La. Apr. 9, 2009).  Thus, as "treating physicians," plaintiff's doctors are exempt from the disclosure and report requirements of Rule 26(a)(2), and defendant's objection on this ground is overruled.

24.     In addition, defendant's hearsay objection to these same records is sustained only in part.  On one hand, Fed. R. Evid. 803(4) permits the admission of a patient's statements made to the physician for purposes of medical diagnosis, treatment and evaluation, which are <u>not</u> hearsay.  On the other hand, the doctor's statements to the patient are excludable hearsay.  <u>Blosser v. Gilbert</u>, 422 F. App'x 453, 461 n.2 (6th Cir. 2011) (citing <u>Field v. Trigg County Hosp., Inc.</u>, 386 F.3d 729, 735-36 (6th Cir. 2004)); <u>Benedict v. Eau Claire Pub. Sch.</u>, 139 F.3d 901, 1998 WL 60374, at *5 (7th Cir. 1998) (citing <u>Bombard v. Fort Wayne Newspapers, Inc.</u>, 92 F. 3d 560, 564 (7th Cir. 1996)); <u>Bulthius v. Rexall Corp.</u>, 789 F. 2d 1315, 1316 (9th Cir. 1985); <u>Love v. Motiva Enters., LLC</u>, No. 07-5970, 2008 WL 4286662, at *13 n.33 (E.D. La. Sept. 17, 2008), <u>aff'd</u>, 349

F. App'x 900 (5th Cir. 2009).  Thus, I have considered only those portions of Exhibit 7 that are not excluded by the hearsay rule.

* * * *

To whatever extent, if any, that any of the foregoing conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

Based on the findings of fact and conclusions of law set forth above, **IT IS ORDERED** that judgment be separately entered in favor of defendant, Access Health Louisiana, formerly known as St. Charles Community Health Center, Inc., and against plaintiff, Cathy Dugas, dismissing plaintiff's claims with prejudice, at plaintiff's cost. Fed. R. Civ. P. 54(d)(1).

New Orleans, Louisiana, this ___29th___ day of December, 2011.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE